DECISION
{¶ 1} Relator, John C. York, filed this original action in mandamus requesting this court to order respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting said compensation, pursuant to State ex rel. Gay v. Mihm (1994),68 Ohio St.3d 315.
{¶ 2} This court referred the matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision including findings of fact and conclusions of law. (See Appendix A.)
{¶ 3} The magistrate found there was some evidence that relator was capable of performing sustained remunerative employment at a sedentary level and that the commission complied with the requirement ofState ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203. The magistrate further found there was some evidence that relator was capable of performing the specific job titles identified in the vocational report. Therefore, the magistrate concluded that the commission did not abuse its discretion in denying relator's request for PTD compensation.
{¶ 4} No objections have been filed to the magistrate's decision.
{¶ 5} Finding no error of law or other defect on the face of the magistrate's decision, we adopt the decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, the requested writ of mandamus is denied.
Writ of mandamus denied.
TYACK, P.J., and BOWMAN, J., concur.
 APPENDIX A IN MANDAMUS
{¶ 6} Relator, John C. York, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total disability ("PTD") compensation and asks this court to find that he is entitled to compensation pursuant to State ex rel. Gay v. Mihm (1994),68 Ohio St.3d 315.
Findings of Fact:
{¶ 7} 1. Relator sustained a work-related injury on June 28, 1990, and his claim has been allowed for: "[a]ggravation of lumbar spinal stenosis; lateral recess syndrome disc bulge L3-4 and L5-S1; herniated lumbar disc L5-S1."
{¶ 8} 2. Relator filed his first application for PTD compensation in 1993. This application was denied by order of the commission mailed December 14, 1993. The commission found that relator was physically capable of engaging in sedentary employment and noted that, at age 52, relator was relatively young. The commission concluded that, although relator had a limited education (completed the 8th grade) his ability to read, write and do basic math, in conjunction with his relatively young age, rendered him capable of retraining for employment within his physical restrictions.
{¶ 9} 3. Relator underwent surgery on September 12, 1994. Thereafter, relator's claim was additionally allowed for: "herniated lumbar disc L5-S1."
{¶ 10} 4. Relator filed a second application for PTD compensation in 1996. This application was denied by order of the commission dated July 1, 1997. The commission concluded that relator could perform work at a sedentary level, that his age of 55 years was not a barrier and that his educational background, while precluding skilled or semi-skilled work, would permit him to perform entry-level, unskilled work.
{¶ 11} 5. Relator filed his third application for PTD compensation, which is the subject of this mandamus action, on October 4, 2000.
{¶ 12} 6. Relator's application was supported by the February 11, 2000 report of Dr. William E. Reutman, who opined that relator was markedly limited in his abilities to perform any routine functions around his house, and that he was otherwise incapable of performing any gainful activities.
{¶ 13} 7. Relator also submitted the February 10, 2000 report of Dr. Bruce F. Siegel, who opined that, in his medical opinion, relator was unable to perform sustained remunerative employment and was permanently and totally disabled due to the medical and nonmedical factors.
{¶ 14} 8. Relator was examined by Dr. James T. Lutz, who issued a report dated December 19, 2000. Dr. Lutz opined that relator had reached maximum medical improvement, assessed a ten percent whole person impairment, concluded that relator could not perform any of his former positions of employment, but that he was capable of performing sustained remunerative work activity in a sedentary capacity. Dr. Lutz completed an occupational activity assessment when he indicated that relator could sit, stand or walk, each for 0-3 hours per day, could lift, carry, push, pull or otherwise move up to ten pounds for 0-3 hours per day; could occasionally climb stairs, use foot controls, reach at knee level; is unrestricted in his ability to handle objects, and reach overhead and at waist level; and also was precluded from climbing ladders, crouching, stooping, bending and kneeling as well as reaching at floor level.
{¶ 15} 9. An employability assessment was prepared by Joseph M. Cannelongo, M.S., L.P.C., C.R.C., and dated January 30, 2001. Based upon the medical reports of Drs. Reutman and Siegel, Mr. Cannelongo concluded that there were no jobs that relator could perform. Within the restrictions noted by Dr. Lutz, Mr. Cannelongo identified the following jobs which relator could perform: "Call-Out Operator * * * Bonder, Semiconductor * * * Surveillance-System Monitor * * * Election Clerk * * * Sliding-Joint Maker * * * Order Clerk, Food and Beverage * * * Charge-Account Clerk * * * Telephone Quotation Clerk * * * Bench Hand * * * Table Worker * * * Patcher * * * Finisher * * * Type-Copy Examiner * * * Adjuster Alarm Mechanism * * * Final Assembler * * * Splitter, Hand * * * Assembler * * * Painter." * * * Mr. Cannelongo concluded that, at age 59, relator would be able to complete short-term training or remediation. With regard to his eighth grade education, Mr. Cannelongo noted that this would suggest the need for significant education or remediation to engage in a formal retraining program. Mr. Cannelongo also noted that relator's past work history in construction positions varied between unskilled to semi-skilled. Mr. Cannelongo concluded that relator's education suggested that he may have some difficulty; however, his ability to maintain his most recent job for 12 years suggested that he had adapted his work behaviors to account for his limited education.
{¶ 16} 10. Relator's application was heard before a staff hearing officer ("SHO") on April 16, 2001, and resulted in an order denying him PTD compensation. Based upon the report of Dr. Lutz, the commission concluded that relator retained the residual functional capacity to perform employment activities which are sedentary in nature. The commission also relied upon the vocational report of Mr. Cannelongo and then provided its own analysis of the nonmedical disability factors as follows: "The Staff Hearing Officer finds that the Claimant is 59 years of age with an eighth grade education and a work history which includes employment as a construction equipment operator, a construction laborer, and a freight handler. The Staff Hearing Officer further finds that the Claimant has no special training or special vocational skills. The Staff Hearing Officer further finds that the Claimant is not able to read, write and perform math well."
{¶ 17} "The Staff Hearing Officer finds that the Claimant's age of 58 years is a mild barrier to the Claimant with regard to his ability to return to and compete in the workforce. The Staff Hearing Officer further finds, however, that age alone is not a factor which would prevent the Claimant from returning to work. The Staff Hearing Officer further finds that the Claimant's limited, eighth grade education is a barrier to the Claimant with regard to his ability to return to work. The Staff Hearing Officer further finds, however, that the Claimant has never had greater than an eighth grade education and it has not prevented the Claimant from working in the past. The Staff Hearing Officer further finds that the Claimant's limited education and academic skills have not only prevented the Claimant from working, they have prevented the Claimant from performing semiskilled employment activities. The Staff Hearing Officer further finds that the fact that the Claimant has learned to perform semiskilled employment activities in spite of his academic skills is evidence that the Claimant is able to benefit from on the job training. The Staff Hearing Officer further finds that these same factors are evidence that the claimant possesses the intellectual capacity to learn to perform at least unskilled employment activities in the future. The Staff Hearing Officer notes that the Claimant is now 59 years of age and not an ideal candidate for rehabilitation program; Claimant last worked when he was 48 years of age. In the eleven years since the Claimant last worked, the Claimant has not involved himself in any program of remediation or rehabilitation, which could have enhanced the Claimant's ability to return to and compete in the workforce. The Staff Hearing Officer accepts the residual functional capacities opinion of Dr. Lutz and finds that the Claimant retains the capacity to perform sedentary employment activities in the future. The Staff Hearing Officer further finds that there is no basis for determining that the Claimant could not benefit from on the job training. The Staff Hearing Officer further finds that the Claimant is capable of performing the following jobs immediately: semiconductor bonder; surveillance system monitor; sliding-joint maker; bench hand; table worker; patcher; finisher; final assembler; splitter, hand; and assembler. The Staff Hearing Officer therefore finds that the Claimant is capable of sustained remunerative employment and is not permanently and totally disabled. Claimant's application for Permanent Total Disability, filed 10/04/2000, is therefore denied."
{¶ 18} 11. Relator's request for reconsideration was denied by order of the commission typed June 4, 2001.
{¶ 19} 12. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
{¶ 20} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus.Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v.Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v.Indus. Comm. (1981), 68 Ohio St.2d 165.
{¶ 21} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel.Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
{¶ 22} Relator challenges the commission's order in three respects: (1) the commission abused its discretion in concluding that he was capable of performing some sustained remunerative employment at a sedentary level based upon a medical report of Dr. Lutz, who concluded, in his occupational activity assessment, that relator was capable of less than sedentary work; (2) the commission's analysis of the nonmedical disability factors did not meet the requirements of Noll; and (3) the jobs listed by Mr. Cannelongo cannot be performed within the restrictions listed by Dr. Lutz. For the reasons that follow, this magistrate finds that relator's arguments are not well-taken.
{¶ 23} Relator first challenges the commission's reliance upon the report of Dr. Lutz who opined that realtor could sit, stand, and walk up to three hours in a workday. Relator contends that he cannot perform sedentary work because he cannot sit for "most" of the day. This magistrate disagrees.
 Sedentary work is defined in Ohio Adm. Code 4121-3-34(B)(2)(a) as follows:
{¶ 24} " * * * `Sedentary work' means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met."
{¶ 25} Clearly, relator is able to exert up to ten pounds of force occasionally and/or a manageable amount of force frequently to lift, carry, push, pull or otherwise move objects based upon the report of Dr. Lutz. However, relator contends that being limited to sitting for three hours a day does not constitute "most" of the day and removes him from being able to perform sedentary work.
{¶ 26} Sedentary work is defined as work which involves sitting most of the time; however, classification of "sedentary work" also includes those jobs which include walking or standing for brief periods of time, providing that walking and standing is required only occasionally. "Occasionally" is defined as occurring up to one-third of the time. When one considers that relator retains the physical ability to sit, stand, and walk each for 0-3 hours per day, relator is able to walk and stand occasionally. Inasmuch as relator is clearly able to meet the lifting requirements of sedentary work, and as the ability to sit, stand, and walk each for 0-3 hours per day, it cannot be said that the commission abused its discretion in finding that there would be some sedentary employment which relator could perform.
{¶ 27} Relator's argument completely ignores the fact that certain jobs can be performed with a sit/stand option. Relator's argument ignores cases such as State ex rel. Wood v. Indus. Comm. (1997),78 Ohio St.3d 414, wherein the Ohio Supreme Court upheld a commission finding that a claimant was able to perform sedentary work when they were physically restricted for no sitting to more than a half hour at a time or standing for more than a half hour at a time, and in State ex rel. Royv. Indus. Comm. (1998), 83 Ohio St.3d 199, wherein the Ohio Supreme Court again upheld a commission determination that a claimant was capable of performing sedentary work where he was restricted to not being able to sit or stand constantly throughout the workday. Further, relator's ability to sit for up to three hours a day alone would permit a part-time workday, which also constitutes sustained remunerative employment. SeeState ex rel. Toth v. Indus. Comm. (1997), 80 Ohio St.3d 360. As such, the commission did not abuse its discretion in denying relator's request for PTD compensation based on relator's argument that he was capable of performing less than sedentary work.
{¶ 28} Relator also contends that the commission's order fails to satisfy the requirements of Noll, supra. This magistrate disagrees. The commission noted that relator's current age of 58 years is a mild barrier with regard to his ability to return to and compete in the workforce. However, the commission found that age alone is not a factor which would prevent him from returning to work. The commission found that relator's limited education was a barrier with regard to his ability to return to work; however, the commission noted that relator's limited education has not prevented him from working in the past, including semi-skilled employment activities. The commission found that relator's ability to learn semi-skilled activities in spite of his limited education constitutes evidence that he is able to benefit from on the job training. Although the commission noted that, at age 59, relator was not an ideal candidate for rehabilitation, relator was 48 years old when he last worked. In those 11 years, relator has not involved himself in any program of remediation or rehabilitation which would have enhanced his ability to return and compete in the workforce. Based upon the medical evidence in the record, the commission found that relator would have been able to take advantage of some programs.
{¶ 29} Pursuant to State ex rel. Bowling v. Natl. Can Corp.
(1996), 77 Ohio St.3d 148, the commission and courts can demand accountability from a claimant who, despite time and medical ability to do so, never tried to further their education or learn new skills. The commission can hold a claimant accountable for their failure to take advantage of opportunities for rehabilitation or retraining. The commission's order more than satisfies the requirements of Noll, and this argument of relator is not well-taken.
{¶ 30} Lastly, relator argues that the specific job titles that Mr. Cannelongo and the commission identified as work he could perform are not within his physical restrictions. However, although relator argues that the Dictionary of Occupational Titles ("DOT") defines sedentary work as work performed in a seated capacity and gives a description of the meaning of the DOT code numbers listed for the jobs the commission found he could do, relator cites no evidence indicating that the specific jobs could not be performed with a sit/stand option or that an employer would be able to accommodate relator's needs. In any event, the commission concluded that those specific positions did fall within the restrictions set by Dr. Lutz, and relator has not demonstrated that the commission abused its discretion in this regard. This argument is not well-taken as well.
{¶ 31} Based on the foregoing, this magistrate concludes that relator has not demonstrated that the commission abused its discretion in denying his application for PTD compensation, and this court should deny relator's request for a writ of mandamus.